UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LILLIAN F. FARLEY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) No. 1:12-cv-01693-DKL-TWP |
| CAROLYN W. COLVIN Acting Commissioner of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Lillian F. Farley ("Farley") requests judicial review of the decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration (the "Commissioner"),[1] denying Farley's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") disability benefits. For the reasons set forth below, the Commissioner=s decision is **REVERSED and REMANDED.**

   I.   **BACKGROUND**

   A.  **Procedural History**

Farley filed applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") on March 10, 2010, alleging an onset of disability of

---

[1] Carolyn W. Colvin became the Acting Commissioner of the SSA on February 14, 2013, while this case was pending. Pursuant to Fed. R. Civ. P. 25(d), she is substituted for the former Commissioner Michael J. Astrue.

September 9, 2009.  [Dkt. 13-2 at 22.]  Farley's applications were denied initially on May 5, 2010, and upon reconsideration on June 17, 2010. [Id.]  Farley requested a hearing, which was held via videoconference on July 6, 2011, before Administrative Law Judge William M. Manico. ("ALJ").  The ALJ denied Farley's application on August 11, 2011. [Dkt. 13-2 at 19.]  The Appeals Council denied Farley's request for review of the ALJ's decision on September 19, 2012, making the ALJ's decision final for purposes of judicial review.  Farley filed her Complaint with this Court on November 17, 2012.  [Dkt. 1.]

### B.  Factual Background and Medical History

Farley was born on December 23, 1977 and was 32 years old on the date of alleged onset of disability.  She has past relevant work as a school bus driver and school bus monitor.  Most recently, Farley was employed as a school bus driver for Indianapolis Public Schools.  She testified that she was terminated from that position in September 2009 for using her cell phone while driving.  Farley's alleged impairments include headaches, occasional blurry vision, carpal tunnel syndrome and back pain.

Farley alleges her onset of disability is the date of her termination of employment in September 2009.  In November 2009, Farley was treated for headaches in the emergency room at Methodist Hospital.  She next sought treatment in the ER for headaches and shortness of breath in April 2010.  Diagnostic testing and examination results were normal.

Farley treated with internist Dr. Malak Hermina at St. Mary's Adult Medicine regularly in 2010.  She complained of headaches, joint pain and low back pain.  Dr. Hermina noted the back pain was likely the result of morbid obesity.  Farley testified

she weighed 420 pounds at the hearing. Dr. Hermina advised Farley to see a dietician to help her lose weight and suggested bariatric surgery. Physical examination and laboratory tests were normal and there was no evidence of arthritis.

In April 2010, Farley underwent a consultative examination with Dr. William Sobat and reported pain in her back, arms, hands and shoulders. Dr. Sobat noted swelling in her feet and that she "has difficulty getting around," but also that she walked without an assistive device. [Dkt. 13-8 at 26.] An MRI of the lumbar spine yielded normal results.

In May 2010, Dr. Steven Roush completed a residual functional capacity assessment based on Dr. Sobat's exam report. Dr. Roush determined Farley could lift 10 pounds frequently and 20 pounds occasionally, stand and/or walk at least two hours in an eight-hour day, and sit for a total of about six hours in an eight hour day.

In late 2010 and 2011, Farley treated with Dr. Keith Ridel, a neurologist, for headaches and visual issues. Worsening headaches in mid-2011 prompted the insertion of a peritoneal shunt to relieve the pressure. Farley reported continued headaches post-surgery, but Dr. Ridel noted the headaches likely were related to the normalization of cerebral spinal fluid pressure after the surgery.

Farley underwent carpal tunnel surgery on her right hand in 2005 and left hand in 2011. Follow-up six weeks after the 2011 surgery indicated a normal range of motion and mild tenderness in the palm. Motor function and sensation were intact.

## II. LEGAL STANDARDS

### A. Standard for Proving Disability

To be eligible for SSI and DIB, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To evaluate a disability claim, an ALJ must use the following five-step inquiry:

| | | |
|---|---|---|
| Step One: | Is the claimant currently employed; | |
| Step Two: | Does the claimant have a severe impairment or combination of impairments; | |
| Step Three: | Does the claimant's impairment meet or equal any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; | |
| Step Four: | Can the claimant perform his past relevant work; and | |
| Step Five: | Is the claimant capable of performing any work in the national economy? | |

20 C.F.R. §§ 404.1520. *See also Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the SSA has the burden at Step Five to show that work exists in significant numbers in the

national economy that the claimant can perform, given his age, education, work experience and functional capacity. 20 C.F.R. § 404.1560 (c)(2).

### B. Standard for Judicial Review

An ALJ's decision will be upheld so long as the ALJ applied the correct legal standard, and substantial evidence supported the decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation omitted). This limited scope of judicial review follows the principle that Congress designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th 2004). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of this conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his

5

conclusions." *O-Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) (citation omitted).

## III.   DISCUSSION

Farley claims the ALJ committed various errors that require reversal of the Commissioner's decision. Specifically, Farley contends the ALJ erred when he: (1) determined Farley's combined physical impairments of morbid obesity and low back pain did not render her totally disabled; (2) failed to summon a medical advisor to determine whether Farley's combined physical impairments medically equaled any Listing; (3) negatively assessed Farley's credibility; and (4) determined Farley could perform past relevant work of school bus monitor.

### A.  Obesity and Low Back Pain

Farley first argues that the ALJ's denial decision was in error because "substantial medical examination and treatment evidence" establish that her "extreme morbid obesity and low back pain" render her totally disabled. [Dkt. 21 at 7.] In support of this argument, Farley asserts the ALJ ignored or only "selectively considered" several medical records that proved disability. Because the ALJ rejected this evidence, Farley argues, he must have only considered the evidence that favored his denial decision. The Court disagrees with this logic.

While Farley cites pieces of evidence she believes the ALJ improperly considered, she fails to explain how or why this evidence establishes disability. For example, Farley asserts the ALJ improperly considered several medical records that

noted Farley's obesity. Yet, obesity is a condition – not a disability. The Seventh Circuit has noted that the disability analysis in the context of social security "is not concerned with health, as such, but rather with ability to engage in gainful employment. A person can be depressed, anxious, and obese yet still perform full-time work. . . [Obesity] can be the *cause* of a disability, but once its causal efficacy is determined, it drops out of the picture." *Gentle v. Barnhart*, 430 F.3d 865, 866 (7th Cir. 2005). At more than 400 pounds, there is no question Farley is obese. But the issue is not whether she is obese; it is whether her weight limits her ability to perform light work. Significantly, none of the medical providers remarked that Farley's impairments rendered her totally disabled. Moreover, two state agency physicians determined Farley was capable of a range of sedentary to light work activity.

There is no support in the record for Farley's bare assertion that her obesity rendered her disabled. Therefore, the Court cannot find error in the ALJ's conclusion that her combination of impairments did not rise to the level of severity required to be considered "disabled."

B. **Medical Advisor**

Farley next asserts the ALJ was required to summon a medical advisor to testify as to whether her combined physical impairments of morbid obesity and low back pain medically equaled a Listing. She further argues that the ALJ should not have relied upon the opinions of the state agency physicians because those physicians were unable to review later medical records. "Presumably if they had reviewed all of the evidence they would have determined she was totally disabled," Farley argues. [Dkt. 21 at 13.]

The Court disagrees with both of Farley's assertions. First, an opinion by a state agency physician fulfills the requirement for an expert medical opinion. State agency physicians are "highly qualified physicians" who also are experts in Social Security disability evaluation. 20 C.F.R. § 416.927(f)(2)(i). The ALJ's determination was based upon the opinions of these physicians, not "his own layperson's opinion" as Farley argues. [Dkt. 25 at 9.] As there are no contradicting medical opinions in the record, the Court finds the ALJ did not err by relying upon the state agency physicians.

Second, Farley's assertion that the state agency physicians would have found her to be disabled if they had viewed the later medical records is nothing more than speculation. Again, Farley points to no evidence in the record that any physician believed her to be totally disabled. Simply stating that the ALJ's denial decision is not supported by substantial evidence does not give this Court any basis for reversal.

### C. Farley's Credibility

Farley also contends the ALJ's negative credibility determination must be reversed because it is contrary to SSR 96-7p. The Court disagrees. In assessing a claimant's credibility when the allegedly disabling symptoms, such as pain, are not objectively verifiable, an ALJ must first determine whether those symptoms are supported by medical evidence. *See* SSR 96–7p, 1996 WL 374186, at *2; *Arnold v. Barnhart,* 473 F.3d 816, 822 (7th Cir. 2007). If not, SSR 96–7p requires the ALJ to "consider the entire case record and give specific reasons for the weight given to the individual's statements." *Simil v. Astrue,* 573 F.3d 503, 517 (7th Cir. 2009) (quoting SSR 96–7p). The ALJ "should look to a number of factors to determine credibility, such as

8

the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and 'functional limitations .'" *Simila,* 573 F.3d at 517 (quoting 20 C.F.R. § 404.1529(c) (2)-(4)).

In examining Farley's credibility, the ALJ first noted the unlikelihood of a person becoming disabled on the same date she is fired for misconduct. [Dkt. 13-2 at 27.] He further noted the lack of treatment for the allegedly disabling impairments before and after the onset date and Farley's receipt of unemployment compensation, for which she had to attest that she was capable of working. Finally, the ALJ summarized medical records the detailed Farley's obesity and resulting impairments and concluded they were consistent with the finding that she was capable of a range of sedentary to light work. Based upon the detailed analysis by the ALJ, the Court finds that his determination to not fully credit Farley's testimony of total disability is supported by substantial evidence.

### D. Past Relevant Work

Farley's final argument for the reversal of the ALJ's decision challenges the ALJ's determination that she is able to perform her past relevant work of school bus monitor. To justify a finding that the claimant is able to return to her past relevant work the record must establish that she could do so on a sustained basis. The ALJ "must list the specific physical requirements of the previous job and assess, in light of the available evidence, the claimant's ability to perform these tasks." *Nolen v. Sullivan,* 939 F.2d 516, 518 (7th Cir. 1991) (citing *Strittmatter v. Schweiker,* 729 F.2d 507, 509 (7th Cir. 1984)). As the regulations make clear "[t]he decision as to whether the claimant retains the

9

functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision." SSR 82–62. Here, the ALJ's decision merely states, "In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed." [Dkt. 13-2 at 30.] This statement fails to satisfy the standard articulated in *Nolen* because it fails to provide facts describing Farley's previous duties or an assessment of her ability to currently perform those specific tasks.

The ALJ noted that Farley worked full-time as a school bus monitor in 2002 and 2003, six years prior to the alleged onset of disability. He then noted the vocational expert's testimony that Farley would be required to lift 20 pounds. While this requirement is consistent with Farley's RFC, the ALJ's analysis should not have ended there. The ALJ offers no analysis of the other functional demands of a bus monitor or Farley's ability to perform them. While the Court found no error with the ALJ's conclusion that Farley's combined impairments did not render her disabled, it does not follow that Farley is able to perform her past relevant work as a bus monitor. The physical challenges presented by her obesity alone may prohibit her from performing this job. For example, can a 420-pound individual effectively move up and down the aisle of a school bus? It is not clear the ALJ even considered the other functional demands of this job, much less rationally articulated the grounds for his Step Four determination. Therefore, the Court cannot affirm the ALJ's decision.

## IV. **CONCLUSION**

The Court concludes the ALJ failed to adequately consider the impact of Farley's impairments on her ability to return to her past relevant work as a bus monitor. On remand, the ALJ should analyze Farley's ability to perform past relevant work as a bus monitor in relation to the specific requirements of that work. If he is unable to articulate the grounds for his Step Four decision, he may need to proceed to Step Five of the sequential evaluation process. Accordingly, the ALJ's decision is **REVERSED and REMANDED** to the agency for further proceedings consistent with this opinion.

Date: 01/10/2014

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov